# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | | |
|---|---|---|
| DONALD EDWARD BLODGETT, | ) | |
| | ) | |
| Plaintiff, | ) | CV 10-1177-CL |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

CLARKE, Magistrate Judge:

Plaintiff Donald Blodgett appeals the Commissioner's decision denying his applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI of

the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's

decision should be affirmed.

1 - REPORT AND RECOMMENDATION

## BACKGROUND

Blodgett alleged disability beginning June 8, 2007, due to infection with human immunodeficiency virus ("HIV") and depression. Admin. R. 136. The administrative law judge ("ALJ") applied the five-step sequential disability determination process described in 20 C.F.R. §§ 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)(describing the decision making process required by the regulations). As pertinent to this case, the ALJ made the following findings. The ALJ found Blodgett's ability to work significantly limited by the combined effects of depression, anxiety, HIV, and chronic obstructive pulmonary disease ("COPD"). Admin. R. 21. The ALJ found that, despite these impairments, Bodgett retained the residual functional capacity ("RFC") to perform light work, involving no interactions with the public and no exposure to noxious fumes or extremes of heat or cold. *Id.* at 22. The ALJ elicited testimony from a vocational expert ("VE"), who said jobs exist in the national economy which a person having Blodgett's RFC and vocational factors could perform. *Id.* at 26. The ALJ concluded that Blodgett was not disabled within the meaning of the Social Security Act. *Id.* at 27.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard of review, the court must uphold the Commissioner's findings of fact, provided they are supported by substantial evidence in the record as a whole, including inferences logically flowing from such evidence. *Tommasetti v. Astrue*, 553 F.3d 1035, 1040 (9th Cir. 2008); *Batson*, 359 F.3d at 1193;

2 - REPORT AND RECOMMENDATION

*Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir.1995); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

## DISCUSSION

**I.    Claims of Error**

Blodgett contends the ALJ failed to accurately assess his RFC. Specifically, he contends the ALJ improperly discredited Blodgett's subjective allegations, rejected the statements of the lay witness, and discounted the opinions of his mental health providers. Blodgett argues that these errors resulted in an RFC assessment that does not include all of his restrictions. The vocational testimony was premised on hypothetical assumptions drawn from the RFC assessment. Therefore, Blodgett argues, the vocational testimony does not support the ALJ's conclusion that he is not disabled.

**II.    Credibility Determination**

In March 2008, Blodgett submitted documents alleging disability based on HIV and depression, with severe nausea, dizziness, fainting, and stomach pain. Admin. R. 136. He alleged he could lift no more than 15 pounds. He claimed short term memory problems and said he could pay attention for five or ten minutes. *Id.* at 149. He could be up and active for 30 minutes to one hour before he had to rest. *Id.* at 153. Blodgett also alleged excessive fatigue, requiring him to take several naps on a daily basis. *Id.* at 155.

At his administrative hearing, Blodgett testified that he had worked as a computer technician until he was laid off in July 2006. *Id.* at 42. In June 2007, he was diagnosed with HIV. He had symptoms of depression, anxiety, dizziness, body numbness, and daily nausea. He would have bouts of vomiting each morning after which he needed to lie down for two hours before he could be up and active. With medication, the vomiting bouts decreased to once or twice weekly. *Id.* at 42-43.

3 - REPORT AND RECOMMENDATION

Blodgett testified that fatigue made it difficult to wake up or stay awake for more than four hours at a time. He typically would take several naps daily. Side effects of his medications included increased fatigue and dizziness. *Id.* at 45, 47. Blodgett testified that he experienced full blown anxiety or panic attacks several times a week, associated with interactive situations such as going to the doctor or to the store. He did not report these episodes to health care providers until recently. *Id.* at 47-48. Blodgett testified that he did not want to leave his apartment or be around others. *Id.* at 53.

The ALJ accepted Blodgett's assertion that his ability to work is significantly limited by HIV, COPD, depression, and anxiety, which limit him to only light work that does not involve interactions with the public. The ALJ found Blodgett's assertions of additional functional limitations not credible. *Id.* at 23-25. Thus, the ALJ discounted Blodgett's suggestion that he experiences the following symptoms with such severity, persistence, and functional impact that they impose limitations exceeding those in his RFC assessment: short term memory problems; dizziness; attention deficits; excessive fatigue requiring naps; fainting; vomiting bouts requiring lengthy recovery time; full blown panic attacks; and depression symptoms. *Id.* at 23.

If a claimant produces objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir. 1986); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186. Here, the ALJ found that Blodgett's medically determinable impairments could reasonably be expected to cause the symptoms

he alleged, but that his statements about their severity, persistence, and limiting effects were not fully credible. Admin. R. 23.

An ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing specific reasons for the credibility finding, supported by the evidence in the case record. SSR 96-7p, 1996 WL 374186, at *4. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In addition, in the Ninth Circuit, the ALJ's explanation for the credibility finding must be clear and convincing. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1283.

In assessing credibility, an ALJ must consider all the evidence in the case record and base his determination on the record as a whole. SSR 96-7p, 1996 WL 374186, at *5; *Smolen*, 80 F.3d at 1284. The ALJ's decision reflects that he considered and accounted for all the evidence in the case record as it reflected on Blodgett's credibility. Admin. R. 23-25.

One strong indication of credibility is the consistency of the claimant's statements internally and with other information in the case record. SSR 96-7p, 1996 WL 374186, at *5. The ALJ found Blodgett's allegations and testimony inconsistent with his prior statements and with the treatment history. Blodgett testified that his symptoms began before his HIV diagnosis in June 2007 and that he thought they affected his work. The record shows that Blodgett stopped working in July 2006 in a general lay off unrelated to symptoms or medical condition. *Id.* at 42. He did not seek treatment or establish care until July 2007, after his HIV diagnosis. At his initial visit, Blodgett said he was in generally good health with a history of childhood asthma and recent situational depression related to his elderly parents' illnesses. *Id.* at 232. In August 2007, before starting an antiretroviral (ARV)

5 - REPORT AND RECOMMENDATION

medication regimen, he reported experiencing nausea in the morning and nocturnal sweats. *Id.* at 231. However, when asked what symptoms might impair his ability to work, he said he had no symptoms other than fatigue and remained interested in seeking vocational training and employment opportunities. *Id.* at 230.

Blodgett began ARV treatment in September 2007. He reported nausea and lightheadedness at first, but these side effects subsided by November 2007. *Id.* at 225. By January 2008, his HIV disease was well controlled with minimal viral load. *Id.* at 223. In May 2008, his HIV disease was under excellent control and he was tolerating his ARV regimen without side effects. He had some situational sleep disturbance related to the recent death of his father. *Id.* at 276.

In May 2008, James Harris, M.D., performed a consultative evaluation. Blodgett's HIV disease was controlled with his CD4 cell count in the normal range and his viral load undetectable. Blodgett told Dr. Harris he had some side effects, including morning nausea, lightheadedness, tingling in the extremities with exertion, and reduced physical stamina. These were not reported to his providers and were not problematic enough to prompt Blodgett or his providers to consider changing his regimen. Dr. Harris opined that, despite his symptoms and treatment side effects, Blodgett could stand and walk for four hours in an eight-hour workday, sit without limitation, and lift and carry up to 30 pounds or 10 to 15 pounds frequently. He found no basis for other limitations. *Id.* at 239-40.

At about the same time, Marc Stuckey, Psy.D., performed a psychodiagnostic evaluation to assess Blodgett's behavioral, emotional, and cognitive functioning. Blodgett reported he had good social relationships and no problems interacting with the public. He denied having any difficulty shopping, using public transportation, or driving. He described his past work performance as

excellent and noted he had never been fired for poor performance. Blodgett admitted intermittent depressive symptoms of fatigue, loneliness, and isolation. He reported experiencing panic attacks about once every three months due to stress and worry. *Id.* at 244. Dr. Stuckey's observations in his mental status examination were benign and Blodgett scored in the normal functioning range on the Mini Mental Status Evaluation. Dr. Stuckey found Blodgett had experienced a single episode of major depression in 2004, now in partial remission. He also diagnosed an anxiety disorder, but did not identify any associated functional limitations. *Id.* at 245.

In August 2008, Blodgett saw his primary care provider, Maria Kosmetatos, N.P. He reported a recurrence of occasional morning nausea associated with stress from school. Kosmetatos made no abnormal objective findings. *Id.* at 345, 347. In November 2008, Blodgett told Kosmetatos he was feeling well with no new symptoms. His HIV disease was under excellent control and he denied any side effects from his ARV regimen. *Id.* at 341-42.

In November 2008, Blodgett went to the emergency room for breathing difficulty with fluid in his lungs, wheezing, and a productive cough. Hospital staff diagnosed an exacerbation of asthma. Blodgett was treated with nebulizers and Ativan to slow his breathing. He was discharged with a prescription for prednisone. *Id.* at 361.

In December 2008, Blodgett's HIV disease remained under excellent control. He was tolerating his medication regimen well and denied any side effects. He told Kosmetatos he was sad because he was moving and would lose his garden. Kosmetatos said she would consider prescribing an antidepressant medication if Blodgett's mood worsened. *Id.* at 339. There is no indication in the record that she ever prescribed an antidepressant, however. In January 2009, Blodgett told Kosmetatos he was experiencing anxiety and panic attacks related to the stress of moving. He

7 - REPORT AND RECOMMENDATION

continued to deny side effects of his ARV regimen and continued to enjoy excellent control of his HIV disease. *Id.* at 337.

In February 2009, Blodgett initiated care with Marilyn Smith, L.P.C., for counseling to help with panic attacks and depression. He reported a remote history of panic attacks with a recent recurrence associated with his change of residence. He had not had any panic attacks since the completion of his move. Although he reported anxiety and depression, he had no interest in taking recommended medications for those conditions. *Id.* at 335-36. When a claimant alleges disabling symptoms but declines recommended therapy for those symptoms, the ALJ can reasonably find the subjective statements exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Blodgett also began receiving treatment from Anna Anderson, P.M.H.N.P. He told her he was experiencing three to five panic attacks per month and feelings of hopelessness and despair. He said he had recently experienced a manic episode, and reported a strong family history of bipolar disorder. Anderson did not record observation of any symptoms of depression, anxiety, or bipolar disorder. Anderson diagnosed bipolar disorder at her initial contact with him, presumably based on his subjective report. Anderson did not prescribe antidepressant or anti-anxiety medications, but initiated Depakote, a treatment for mania associated with bipolar disorder. *Id.* at 335.

Blodgett did not comply with the Depakote prescription because he feared he would gain weight and become diabetic. *Id.* at 330. In April 2009, Anderson prescribed Abilify, an anti-psychotic drug used to treat bipolar disorder. This treatment made Blodgett feel much better, but caused a rash, so he discontinued it. *Id.* at 322, 330. In June 2009, Anderson prescribed Risperdal, another anti-psychotic medication. This also made Blodgett feel much better, but made him sleepy during the day. In July 2009, Blodgett was tolerating the Risperdal well, but occasionally had to take

8 - REPORT AND RECOMMENDATION

a nap during the day. *Id.* at 319-20. He discontinued Risperdal, and in August 2009, Anderson prescribed Seroquel, another anti-psychotic agent. *Id.* at 314. Blodgett did not complain of daytime drowsiness or report taking naps thereafter. Anderson did not record abnormal objective findings; her mental status evaluations were routinely normal.

Meanwhile Blodgett's counseling visits with Smith focused on setting boundaries to discourage others from taking advantage of his generosity. *Id.* at 317, 324, 331, 332. In June and July 2009, Blodgett reported having panic attacks at night, in which he could not catch his breath due to anxiety. *Id.* at 320-21. In September 2009, he said the panic attacks had decreased. *Id.* at 310. A few days before his administrative hearing, Blodgett told Smith his anxiety and panic symptoms had increased again. *Id.* at 371. Smith did not record abnormal objective findings in her treatment notes, except Blodgett was occasionally tearful, and at one session appeared nervous and a little hyper. *Id.* at 329, 332.

This treatment history shows that the objective medical findings and Blodgett's subjective reports to his health care providers are inconsistent with his allegations and testimony. For example, Blodgett testified that he had trouble being around people, but told Dr. Stuckey that he had good social relationships, no problems interacting with the public, and no difficulty shopping or using public transportation. He testified that he thought his impairments affected his performance at work, but told Dr. Stuckey his work performance had been excellent. *Id.* at 23, 24, 40-42, 53, 244. Blodgett testified that at the time of his HIV diagnosis in June 2007, his symptoms included passing out, dizziness, numbness, nausea, and bouts of vomiting so severe that he had to lie down for two hours before he could be up and active. Contemporaneously he told his social worker that he had no symptoms that would limit his ability to work other than fatigue. He remained interested in

9 - REPORT AND RECOMMENDATION

vocational training and employment and decided he would be "jumping the gun" to apply for disability benefits at that time. *Id.* at 230. In November 2007, Blodgett said that nausea initially associated with ARV therapy had subsided. *Id.* at 225. Except for a brief period in August 2008, Blodgett then consistently told Kosmetatos in follow-up visits that he was tolerating the ARV regimen well without any side effects. *Id.* at 23-24, 276, 307, 312, 315-16, 318, 326-28, 337, 339, 341-42.

Blodgett testified that he experiences two or three full blown panic attacks per week, associated with activities such as going to the store or to medical appointments. *Id.* at 47-48. In contrast, he told Dr. Stuckey his panic attacks occurred only once every three months, and were associated with general stress and worry. *Id.* at 244. In January 2009, Blodgett reported a recent onset of panic attacks associated with the stress of moving, but declined antidepressant and anti-anxiety medications. *Id.* at 335-37. In June 2009, Blodgett said he was having panic attacks only at night. *Id.* at 319-21. After initiating Seroquel in August, 2009, Blodgett reported his panic attacks had decreased and were intermittent. *Id.* at 307, 309-10.

Blodgett's testimony suggested that he had been seen in the emergency room for what was determined to be a severe panic attack. *Id.* at 51. The emergency room and follow up records show that he was diagnosed with an asthma exacerbation and bronchitis and do not mention a panic attack or anxiety. *Id.* at 340-41, 361. Blodgett testified that he tried to go to school, but had to quit because he could not get along with others, had to take naps, and had shaking and sweating symptoms from stress and anxiety. *Id.* at 54-55. At the time, however, he told Komestatos that he left school due to perceived discrimination. *Id.* at 345.

10 - REPORT AND RECOMMENDATION

Blodgett testified that he has difficulty waking up and staying awake for more than four hours without taking a nap. *Id.* at 45. His treatment records reflect that he first complained of excessive daytime drowsiness and the need to take naps in June 2009 when he started Risperdal . *Id.* at 309. In July 2009, he said he occasionally had to take a nap during the day. *Id.* at 319-20. He discontinued Risperdal that month and did not report napping or excessive daytime sleepiness thereafter. *Id.* at 23, 317.

Blodgett testified that he had difficulty walking very far or doing household chores. *Id.* at 45. He told Dr. Stuckey, however, that he had no difficulty with household chores or routine daily self maintenance and his hobbies included walking with his pets. He also enjoyed gardening interacting with friends and engaged in a typical range of daily activities. *Id.* at 243.

The inconsistencies identified by the ALJ are supported by substantial evidence and support an adverse inference as to the credibility of Blodgett's statements about the severity, persistence, and limiting effects of his symptoms. SSR 96-7p, 1996 WL 374186, at * 5; *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). Blodgett offers post hoc explanations for these inconsistencies, but his argument would require the court to accept a different interpretation of the evidence than that found by the ALJ. Even if the evidence could be rationally interpreted in a manner more favorable to Blodgett, the court must defer to the Commissioner's rational findings of fact. 42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193; *Andrews,* 53 F.3d at 1039-40.

In summary, the ALJ considered the available evidence relating to the consistency and veracity of Blodgett's statements. Taken as a whole, his explanation of his credibility finding is clear and convincing and his factual findings are supported by inferences reasonably drawn from substantial evidence in the record. The ALJ's decision provides an adequate basis for the court to

11 - REPORT AND RECOMMENDATION

conclude that he did not discredit Blodgett's subjective statements arbitrarily. *Orteza*, 50 F.3d at

750; SSR 96-7p, 1996 WL 374186, at *4. Accordingly, the credibility determination should be

upheld.

### III.    <u>Lay Witness Statements</u>

The record includes a written statement dated in November 2009 from Helen Boers,

Blodgett's sister. An ALJ must consider the statements of non-medical sources who are in a position

to observe a claimant's symptoms and daily activities. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d

1050, 1053 (9th Cir. 2006). Such lay witnesses are competent to testify regarding the claimant's

condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Lay testimony as to the claimant's

symptoms or how an impairment affects the ability to work cannot be disregarded without comment.

*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness

testimony, he must give reasons that are germane to the witness. *Bayliss v. Barnhart*, 427 F.2d 1211,

1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Boers said that even before Blodgett was diagnosed with HIV, he told her he was having

trouble staying awake, concentrating, and getting his work done. Admin. R. 198. Blodgett,

however, denied any performance problems at work and stopped working due to a general lay-off

unrelated to his health or performance. *Id.* at 42, 244. Boers said Blodgett is short-tempered and

gets into arguments and becomes upset with people in interactions with the public. *Id.* at 198, 200.

Blodgett reported, however, that he has good social relationships and no difficulty interacting with

the public, going to stores, or using public transportation. *Id.* at 244. Boers said that Blodgett had

a lot of trouble with ARV side effects every morning. He would regularly vomit and afterwards

would need to lie down to rest. *Id.* at 198. Blodgett reported lightheadedness and nausea when the

ARV therapy began, but consistently denied side effects numerous times thereafter. In March 2009,

Blodgett reported a recurrence of morning nausea with vomiting episodes, but said he felt fine after

each episode ended. *Id.* at 332. Boers said that Blodgett has not been able to stay awake for more

than four hours at a time since beginning ARV therapy. *Id.* at 200. The treatment record reflects,

however, that Blodgett complained of excess drowsiness and the need to nap only during the short

time that he was taking Risperdal. *Id.* at 317-20. Contrary to Boers's assertion of severe limitations

in activities of daily living, Blodgett engaged in a wide range of daily activities and denied any

difficulty with daily household chores, shopping, driving, or using public transportation. *Id.* at 243.

The ALJ considered Boers's statement and found it was not fully credible in light of these

inconsistencies between her assertions and the treatment record. *Id.* at 24-25. The ALJ's decision

demonstrates that he did not ignore or arbitrarily discount the lay witness statement. He considered

Boers's statement and found it unpersuasive for germane reasons supported by substantial evidence

in the record as a whole. *Nguyen*, 100 F.3d at 1467; *Bayliss*, 427 F.2d at 1218; *Lewis*, 236 F.3d at

511. The ALJ's evaluation of the lay witness statements should be upheld.

**IV.    Medical Source Statements**

Blodgett contends the ALJ improperly evaluated the statements of Nurse Practitioner

Anderson and Counselor Smith. As described previously, Blodgett began counseling sessions and

medication therapy with Smith and Anderson in February 2009. In November 2009, Smith and

Anderson jointly prepared a mental health assessment worksheet on which they rated Blodgett's

level of functioning in 12 categories of work-related activities. They indicated Blodgett had marked

limitation in these abilities:    performing within a schedule and maintaining attendance and

punctuality; interacting appropriately with the public; and accepting instructions and responding appropriately to criticism from supervisors. Admin. R. 366-67.

The worksheet included a brief narrative explanation stating that Blodgett's panic attacks could make it difficult for him to leave his home, which could affect his punctuality. If he experienced a panic attack, he might feel the need to flee the situation. The implication is that if he experienced a panic attack at work, he might need to take an unscheduled break. Blodgett told them he gets irritated easily with people who act inappropriately or make an unreasonable request. *Id.* at 367. This subjective claim appears to be the basis of the opinion that Blodgett could have difficulty accepting instructions and criticism from supervisors. Anderson and Smith also opined that Blodgett would likely be absent from work two days per month due to his symptoms or treatment and would need extra unscheduled breaks of two or more hours two days a week. *Id.* at 367-68.

An ALJ is required to consider and give due weight to all relevant evidence in the case record, including opinion evidence from medical sources such as nurse practitioners and counselors who have seen the claimant in their professional capacity. 20 C.F.R. §§ 404.1527(b), 416.927(b); SSR 06-03p, 2006 WL 2329939, *4. The regulations treat nurse practitioners and counselors as "other sources." 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). The statements of "other sources" are evaluated as lay witness statements. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). Accordingly, to properly discount the opinion of Anderson and Smith, the ALJ was required to give reasons germane to the witness. *Id.*; *Lewis v. Apfel,* 236 F.3d at 511.

Here the ALJ considered the opinion of Anderson and Smith and determined it was entitled to little weight. Notably, the ALJ accepted their assertion that Blodgett is unable to interact

14 - REPORT AND RECOMMENDATION

appropriately with the public. In all other respects, he found their opinion inconsistent with the treatment record, which reflected generally normal mental functioning. Admin. R. 25.

This conclusion is supported by reasonable inferences drawn from substantial evidence in the record. Although Blodgett alleges disability beginning in July 2007, the treatment record shows he did not seek treatment or complain of persistent panic attacks until February 2009. The ALJ could reasonably conclude that if Blodgett's symptoms were as debilitating as he alleges, he would have sought treatment to alleviate his distress. *Batson,* 359 F.3d at 1193. In May 2008, Dr. Stuckey's psychodiagnostic evaluation indicated that Blodgett had good social relationships, and no problems interacting with the public, shopping, using public transportation, or driving. Blodgett's past work performance had been excellent and he had never lost a job due to poor performance or inability to interact appropriately with supervisors. Admin. R. 244. Even the treatment records of Anderson and Smith reflect generally benign objective observations.

Blodgett reported his panic attacks occurred at night, and not during times of activity. *Id.* at 319-21. This reasonably suggests they would have limited impact on his ability to work. In August 2009, after several trials of medications which were effective, but had side effects, Anderson started Blodgett on Seroquel. *Id.* at 314. In September 2009, Blodgett's behavior, mood, affect, orientation, judgment, insight, memory, attention, concentration, and thought content appeared to be normal. *Id.* at 308, 311. He told Smith he felt better mentally, his panic attacks had decreased, and he had developed coping skills. *Id.* at 309. He told Kosmetatos that Seroquel helped control his anxiety and that he had experienced only a couple of panic attacks while taking the medication. *Id.* at 307. He told Anderson he was "doing pretty well" on Seroquel with only intermittent panic attacks. *Id.* at 309.

15 - REPORT AND RECOMMENDATION

In November 2009, Smith provided a post-hearing written statement.  She opined that Blodgett tries to appear normal and minimize his own psychological distress.  She believed, based on Blodgett's subjective statement that he feels safe in her clinic, that Blodgett only recently developed a willingness to be more open about the frequency and severity of his panic attacks. *Id.* at 369.  While this view of the evidence might explain why Blodgett's treatment record does not reflect the some of the extreme mental impairments he alleges, it does not compel a finding that the ALJ''s interpretation of the evidence is irrational.  The ALJ's findings of fact must be upheld, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

The ALJ reasonably gave greater weight to the evaluation of Dr. Stuckey and the findings of the agency reviewing psychologists, with the notable exception regarding Blodgett's inability to interact with the public.  The ALJ's reasons for partially discounting the worksheet of Anderson and Smith are germane and supported by the record as a whole.  Accordingly, the ALJ's evaluation of their assessment should be affirmed. *Turner*, 613 F3d at 1223-24; *Lewis,* 236 F3d at 511.

## V.    <u>Vocational Evidence</u>

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043.

Here, the ALJ elicited testimony from the VE based on hypothetical questions reflecting the limitations in his assessment of Blodgett's RFC.  Admin. R. 62-64.  The VE testified that a

hypothetical person with Blodgett's age, education, work experience, and RFC could perform the activities required in light, unskilled occupations, such as packager and mail clerk, which represent approximately 200,000 jobs in the national economy. *Id.* at 26, 63.

Blodgett contends the ALJ improperly elicited the VE's testimony with hypothetical assumptions that did not accurately reflect all of his functional limitations. The ALJ used hypothetical assumptions that reflected his evaluation of the evidence and the RFC assessment he reached. The ALJ was not required to incorporate limitations he found unsupported by the evidence or supported only by evidence he properly discounted. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1164-65 (9th Cir 2001).

## RECOMMENDATION

The ALJ's conclusion that Blodgett failed to prove he was disabled within the meaning of the Social Security Act is based on proper legal standards and supported by substantial evidence in the record as a whole. Accordingly, the Commissioner's decision that Blodgett is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act should be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by January 17, 2012. If objections are filed, any*

17 - REPORT AND RECOMMENDATION

*response to the objections are due by February 3, 2012, see Federal Rules of Civil Procedure 72 and 6.*

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 28 day of December, 2011.

Mark D. Clarke
United States Magistrate Judge

18 - REPORT AND RECOMMENDATION